IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW S. JONES,<br><br>                    Petitioner,<br><br>          vs.<br><br>CLARK DUCART, Acting Warden,<br>Pelican Bay State Prison,[1]<br><br>                    Respondent. | No. 2:13-cv-02129-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 37]<br>and<br>MEMORANDUM DECISION |

Matthew S. Jones, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Jones is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Pelican Bay State Prison, Corcoran.  On May 30, 2014, this Court denied the petition for habeas relief filed by Jones's co-defendant, Joshua Nickerson, in *Nickerson v. Davey*, No. 2:13-cv-00214-JKS, and the Ninth Circuit Court of Appeals denied Nickerson's request for a certificate of appealability, Case No. 14-16544.  Jones' Petition raises some of the claims at issue in Nickerson's case.  Respondent has answered, and Jones has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On January 30, 2009, Jones, along with Nickerson and Cassel Meadors, was charged with one count of attempted murder.  The information alleged that all three individuals committed the offense for the benefit of the Crips street gang.  It further alleged that Meadors personally discharged a firearm and that all three were principals in the offense, at least one of whom used a

---

[1]        The Clerk of Court is directed to correct the caption to reflect that the Respondent is Clark Ducart.

firearm.  Jones and Nickerson each were additionally charged with two counts of attempting to

dissuade a witness.  As to those crimes, the information alleged that Jones and Nickerson

committed the crimes by force or an express or implied threat of force or violence and for the

benefit of a street gang.

On direct appeal of his conviction, the California Court of Appeal recounted the

following facts underlying Jones's indictment:

> The attempted murder occurred on July 25, 2008, at an apartment complex in the
> northern part of Sacramento, an area "infested with Crips" that had become "hot" for
> gang-related crimes.  At the time, [Jones and Nickerson] were living in the apartment
> complex and were members of the Crips gang.
>
> Also living in the apartment complex at the time was Alisha S.  Alisha, her sister,
> Ieisha S., their children, and Alisha's boyfriend, Mauryea A. shared an apartment.  Alisha
> was friends with [Jones and Nickerson].
>
> On the night of July 25, 2008, Alisha, Mauryea, and two of Alisha's friends,
> Felicia T. and Melissa B., were at Alisha's apartment.  A little before 10:00 p.m., they
> heard a knock at the door and Alisha answered it.  Outside were [Jones and Nickerson]
> and a third individual, Cassell Meadors, who was also a Crips member.  [Jones and
> Nickerson] entered the apartment, but Meadors remained outside.  Nickerson walked into
> the kitchen and Jones stayed in the living room area with Mauryea.
>
> While conversing with Jones, Mauryea said something about "cuz" or "blood,"
> and that upset Jones.  An argument ensued between them.  Alisha later reported to police
> that Mauryea said something like, "Blood, can you get out of my girlfriend's house?  She
> gets an attitude every time you come over here, and she takes that out on everybody when
> you come over here."  According to the prosecution's gang expert, calling a Crip gang
> member a Blood is considered a challenge.  Mauryea reported to police that [Jones and
> Nickerson] had been talking about "guns and things" and he thought this was
> disrespectful to the house.  He told them so and that he wanted them to leave.
>
> Meadors entered the apartment, got in Mauryea's face and started yelling at him.
> Meadors said, "Don't talk to my motherfucking brother like that."  Alisha yelled to them
> from the kitchen to take their argument outside.  Nickerson emerged from the kitchen and
> the four men walked outside the apartment.  Alisha closed and locked the door behind
> them.
>
> When Mauryea walked outside, he found the other three standing in a semi-circle
> facing him.  [Jones and Nickerson] were "posturing like they [had] guns."  They
> continued to argue with Mauryea.  At one point, Alisha stepped outside and tried to get
> Mauryea to come back inside, but he refused.  Meadors told Mauryea he was going to
> shoot him and was making hand signs.  Although Mauryea was not being aggressive
> toward the other three, he also refused to be intimidated by them.  Mauryea heard

someone say that they were the "Trigga Mob."  Meadors said to Mauryea he would "bust [him] out right now" and would "shoot this whole house up."  Meadors also brandished a handgun.  When he saw the gun, Mauryea asked, "Are you going to shoot me?"

At some point during all of this, Mauryea apologized and offered to shake hands with Jones and "squash it."  Jones responded that, "We're cool," but he refused to shake Mauryea's hand.

Mauryea eventually walked past the other three and, when he turned back toward them, found Jones "dead in [his] face."  Mauryea saw that Jones held one hand behind the back of his leg.  Jones made an overhand motion with that arm and struck Mauryea in the eye with what Mauryea believed to be the butt of a gun.  Mauryea immediately lost sight in that eye.

Mauryea grabbed Jones and the two wrestled around.  Mauryea got Jones in a headlock.  Nickerson and Meadors shouted encouragement to Jones and assisted him by hitting Mauryea in the back and the back of the head.  As they wrestled, Mauryea could see a gun being handed off from one to another of the assailants.  Mauryea then heard a shot and felt a burn on his shoulder.

Mauryea immediately released his hold on Jones and fell down on "all fours."  He heard Nickerson say something to him like, "I told you," and then saw the three walk away together.  He also saw one of them pass a gun to Nickerson.

Mauryea struggled to his feet and returned to the apartment, where he told the others he had been shot.

Mauryea was taken to the hospital and examined.  He had injuries to his eye, the back of his head, and his shoulder.  There were multiple fractures to the orbit around his eye and he suffered vision loss due to damage to the optic nerve.  There were scratch marks on his shoulder and two penetrating wounds consistent with gunshots.  X-rays also revealed metallic fragments near the shoulder blade, which were not removed by medical personnel.

[Jones, Nickerson,] and Meadors were later arrested.  On August 6, 2008, Ieisha received a call on her cell phone while she was walking her daughter to school.  The caller identified himself as John John, but she recognized the voice as that of Jones.  Jones said, "My boy's in jail. You guys got him in trouble. Come outside."  He also said, "[H]i bitch. Nigga, my homeboy's in jail and you guys are snitches."  He also said, "I'm gonna shoot your fucking house.  I'm in front your [ sic ] apartment.  Come out now."  Ieisha immediately reported this to the police.

That same day, Alisha called the police and reported she had received a threatening call from Nickerson on August 4.  Alisha reported that Nickerson said to her, "You're going to get it.  I'm 29th Street, Cuz.  You're gonna get it.  You better watch your backs."  Alisha also heard from "this dude named Sean" that "the word on the street was that these guys, if [she] snitched, were going to kidnap and torture [her] kids."  Alisha also heard on the street that [Jones and Nickerson] thought she had been identifying them as the perpetrators.  She told police in a later interview that she was told if she snitched something would happen to her children and "they" were going to shoot up her house.  Alisha later visited Nickerson in jail to tell him she was not snitching on him.

3

*People v. Jones*, No. C062720, 2012 WL 2826805, at *1-2 (Cal. Ct. App. July 11, 2012).

Trial began on May 28, 2009.  On June 1, 2009, Meadors' motion to sever was granted, and the trial court ordered that Meadors' case be tried before one jury and that Nickerson and Jones be tried before a second jury.  Upon conclusion of trial, the jury convicted Jones and Nickerson of all counts and found the enhancement allegations to be true.[2]

The trial court subsequently sentenced Jones to a determinate imprisonment term of 7 years, the middle term, on the attempted murder charge.  The court also sentenced Jones to indeterminate terms of 25 years to life for the firearm enhancement on the attempted murder charge and a consecutive sentence of life with a minimum parole eligibility of 7 years on one of the attempting to dissuade a witness charges.  The other attempting to dissuade a witness charge and its gang enhancement was stayed pursuant to California Penal Code § 654.[3]

Through counsel, Jones appealed his conviction, arguing that: 1) there was insufficient evidence to sustain his conviction for attempted murder; 2) there was insufficient evidence to sustain the great bodily injury finding; 3) the trial court erred in instructing the jury as to the firearm enhancement; 4) the prosecution failed to prove the gang enhancement by substantial evidence; 5) the prosecutor committed misconduct by misstating the burden of proof; and 6) trial

---

[2]     Meadors' jury likewise convicted him of attempted murder and found true allegations that he committed the crime for the benefit of a criminal street gang, he intentionally and personally used a firearm, and a principal intentionally and personally discharged a firearm causing great bodily injury.  *People v. Meadors*, No. C063060, 2011 WL 2447338, at *1 (Cal. Ct. App. June 20, 2011).

[3]     Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  CAL. PENAL CODE § 654.

counsel was ineffective for failing to object to the firearm enhancement instruction.  Jones also joined in the arguments raised by Nickerson on direct appeal.  The Court of Appeal affirmed Jones's conviction in its entirety in a reasoned, unpublished opinion.  *Jones*, 2012 WL 2826805, at *17.  Jones then petitioned for review to the California Supreme Court, raising the same claims that he unsuccessfully raised before the Court of Appeal.  The California Supreme Court denied the petition without comment on October 10, 2012.

Jones then filed in the California Superior Court a *pro se* petition for habeas relief.  In that petition, Jones argues that trial counsel was ineffective for a variety of reasons relating to the presentation at trial of evidence of the victim's injuries.  The superior court denied the petition in a reasoned, unpublished decision issued on December 5, 2013.  Jones raised the same ineffective assistance claims to the California Court of Appeal in another *pro se* habeas petition, which was denied without comment on April 17, 2014.  Jones also raised the ineffective assistance claims in a *pro se* habeas petition in the California Supreme Court.  He likewise filed a supplemental brief in which he alleged that his trial counsel and the California State Bar Association unlawfully prevented him from obtaining documentary evidence that would benefit his habeas claims.  The California Supreme Court denied all claims on October 14, 2014.

Prior to filing for state post-conviction relief, Jones timely filed a Petition for a Writ of Habeas Corpus to this Court on September 20, 2013.  The Petition is now before the undersigned judge for adjudication.  Also pending before the Court is Jones's motion at Docket No. 37, which "request[s] . . . the production[,] maintaining and testing of newly discovered exculpatory evidence," and is opposed by Respondent, Docket No. 43.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Jones raises the following grounds for relief: 1) there was insufficient evidence to sustain his attempted murder conviction; 2) there was insufficient evidence to sustain the firearm enhancement; 3) the trial court erroneously instructed the jury regarding the firearm enhancement; 4) there was insufficient evidence to sustain the gang enhancement; 5) the prosecutor committed misconduct during summation, and his trial counsel was ineffective for failing to object; 6) the existence of cumulative error warrants reversal of his conviction; and 7) trial counsel was ineffective with regard to the doctors' testimonies at trial and in confronting and presenting witnesses regarding the dissuading charges.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.      Sufficiency of the Evidence (Claims 1, 2, 4)

Jones first argues that there was insufficient evidence to support the attempted murder conviction, the firearm enhancement, or the gang enhancement.  As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency

review.  *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

  1.  Attempted murder

  Under California law, murder is the unlawful killing of a human being with malice aforethought.  CAL. PENAL CODE § 187(a).  To prove attempted murder, it must be established that an individual took at least one direct but ineffective step toward killing a person and he intended to kill that person.  CAL. PENAL CODE §§ 21 a, 664, 187(a).  Although motive is not an element of the crime of attempted murder, evidence of motive is often probative of intent to kill. *People v. Smith*, 124 P.3d 730, 741 (Cal. 2005).  Additionally, aside from motive, intent to kill may be inferred from a perpetrator's acts and the circumstances of the crime.  *Id.*  In particular, the act of purposefully firing a gun at another at close range gives rise to an inference of intent to kill, regardless if there is any showing of a particular motive to kill the victim.  *Id.* at 742.

  In this case, the prosecution proceeded on the theory that Meadors was the actual shooter and that Jones and Nickerson aided and abetted Meadors.  Under California law, a person who either directly commits or aids and abets an offense is guilty as a principal.  *See* CAL. PENAL CODE § 31.  A defendant may be found guilty under an aiding and abetting theory if he: 1) acted with knowledge of the unlawful purpose of the perpetrator; 2) acted with the intent or purpose of committing, encouraging, or facilitating the commission of the offense; and 3) by act or advice,

aided, promoted, encouraged or instigated the commission of the crime. *See People v. Prettyman*, 926 P.2d 1013, 1018-19 (1996). An aider and abettor's presence at the scene of the crime, companionship with the perpetrator, and conduct before and after the offense are among the factors that may be considered in determining whether the aider and abettor had the requisite knowledge and intent. *People v. Campbell*, 30 Cal. Rptr. 2d 525, 529 (Cal. Ct. App. 1994).

On direct appeal, Jones likewise argued that there was insufficient evidence to support a jury's finding that any of the defendants intended to kill Mauryea. In rejecting Jones' claim, the California Court of Appeal's application of the *Jackson* standard was not objectively unreasonable. When viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have inferred an intent to kill. Facts relevant to the attempted murder conviction are as follows: During the initial part of the confrontation, Meadors, Jones, and Nickerson attempted to intimidate Mauryea by posturing as if they had guns. The situation escalated when Meadors pulled out a gun and told Mauryea that he would "bust" him. The situation further escalated when Jones hit Mauryea in the head with a gun and proceeded to fight him. After Mauryea had Jones in a headlock and Meadors and Nickerson had struck Mauryea numerous times from behind, Meadors acted on his earlier threat and shot Mauryea in the back at least one time. After Mauryea was shot, Meadors handed the gun to Nickerson who approached the victim and said, "I tried to tell you." Nickerson then fled with the gun and the other suspects. A police detective, testifying as a gang expert, testified about the obligation that a Crip gang member would have to "back up" his fellow gang members who have been disrespected. A rational trier of fact viewing this evidence in the light most favorable to the prosecution could

infer that Mauryea had an intent to kill and that Jones had the requisite knowledge and intent to be liable as an aider and abetter.

Jones argues that there was insufficient evidence to support his attempted murder conviction because it was not proven that the victim was shot and thus there was insufficient evidence to show that any of the defendants intended to kill. But Jones misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, the appellate court determined that there was sufficient evidence, based on Mauryea's testimony, that Meadors shot Mauryea in the back, that Meadors intended to kill Mauryea with that shot, and that the actions of Jones and Nickerson likewise evinced an intent so as to satisfy the elements of attempted murder under California law. *See United States v. Larios*, 640 F.2d 938, 940 (9th Cir. 1981) ("The testimony of one witness . . . is sufficient to uphold a conviction." (citations omitted)); *see also Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004) (per curiam) (same). Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Jones bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found that Jones was guilty of attempted murder, especially considering the double deference owed under *Jackson* and AEDPA. Jones is therefore not entitled to relief on this legal insufficiency claim.

2.      Firearm enhancement

A firearm enhancement under CAL. PENAL CODE § 12022.53 is appropriate where a

designated offense, including attempted murder, is committed with the use of a firearm.  *Ross v.*

*Felker*, 669 F. Supp. 2d 1135, 1147 (C.D. Cal. 2009).  Section 12022.53(d) authorizes a sentence

enhancement for "any person who, in the commission of a felony [including attempted murder]

personally and intentionally discharges a firearm and proximately causes great bodily injury, as

defined in [Penal Code] Section 12022.7, . . . to any person other than an accomplice."  *See* CAL.

PENAL CODE § 12022.53(d) (referencing CAL. PENAL CODE §§ 12022.53(a)(1), (18) (attempted

murder)); *see also* CAL. PENAL CODE § 12022.7(f) (defining "great bodily injury" as "significant

or substantial physical injury").

Jones asserts that the evidence was insufficient to prove that he caused great bodily

injury, arguing that the victim's wound was "superficial," and that the evidence was insufficient

to show that any of the defendants shot the victim.  Viewing the evidence in the light most

favorable to the verdict, however, and for the reasons expressed by the state appellate court,

there was sufficient evidence introduced at Jones' trial to support the jury finding on the firearm

enhancement.  As explained by the state court, and as previously discussed, the testimony of the

victim and as well as the medical evidence certainly supports the jury's determination that a

firearm had been discharged.  Moreover, in light of that evidence, a reasonable juror could

certainly have concluded that the victim suffered great bodily injury.  As the appellate court

found:

> The gunshot penetrated Mauryea's back in the area of the shoulder and left what
> appeared to be a bullet fragment that treating physicians left in place.  The bullet strike to
> the back was sufficiently severe to drive Mauryea to his knees and to force him to release
> his hold on Jones.  Mauryea felt pain and a burning sensation.  Under these

12

circumstances, we cannot say no reasonable jury could have concluded the victim suffered great bodily injury within the meaning of section 12022.7.

*Jones*, 2012 WL 2826805, at *6.

The conclusion of the state court that sufficient evidence supported the firearm use enhancement is not contrary to or an unreasonable application of United States Supreme Court authority.  Accordingly, Jones is not entitled to relief on this claim.

　　　　3.　　　　Gang enhancement

To sustain a jury's gang enhancement finding, "there must have been evidence upon which a rational trier of fact could find that [the petitioner] acted with the 'specific intent to promote, further, or assist in' *some* type of 'criminal conduct by gang members,' which may include the crimes of conviction."  *Emery v. Clark*, 643 F.3d 1210, 1216 (9th Cir. 2011) (per curiam) (citation omitted).  The Ninth Circuit previously held in *Garcia v. Carey*, 395 F.3d 1099 (9th Cir. 2005), and *Briceno v. Scribner*, 555 F.3d 1069 (9th Cir. 2009), that the "gang enhancement can only be applied when the defendant had the specific intent to facilitate gang members' criminal activities *other than* the charged crime."  *Emery*, 643 F.3d at 1215.  The California Supreme Court explicitly disapproved of that interpretation in *People v. Albillar*, 244 P.3d 1062 (Cal. 2010), and the interpretation is no longer binding in this Circuit.  *See Emery*, 643 F.3d at 1215-16 (recognizing "that the California Supreme Court has overruled *Briceno* and *Garcia's* interpretation of [California Penal Code] section 186.22(b)(1)" and applying "the California Supreme Court's authoritative interpretation of section 186.22").  Thus, "[t]here is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*."  *Albillar*, 244 P.3d at 1075-76 (citations omitted).

In this case, the majority of evidence that Jones' acts were gang-related and thus were subject to the gang enhancement were provided by a gang expert who testified that an individual may act in retaliation to preserve his status in the gang, as well as the overall status of the gang. This testimony falls within the recognized scope of permissible expert testimony as to gang culture, habits, and motivation.  *In re Frank S.*, 46 Cal. Rptr. 3d 839, 842 (Cal. Ct. App. 2006) ("It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation.").  "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence."  *People v. Lopez*, 81 Cal. Rptr. 386, 391 (Cal. Ct. App. 1969) (citation and internal quotation marks and brackets omitted).

The Court agrees with the state court's determination that the expert's testimony provided sufficient evidence regarding Jones' involvement in the Crips gang and to prove the elements required for finding a criminal street gang enhancement.  In making this determination, the Court is cognizant of the California Supreme Court's warning that "[n]ot every crime committed by gang members is related to a gang."  *Albillar*, 244 P.3d at 1071.  Even "when two or more gang members commit a crime together, they may be on a frolic and detour unrelated to the gang."  *Emery*, 643 F.3d at 1214 (citing *Albillar*, 244 P.3d at 1072).

Here, however, there was sufficient evidence from which a reasonable factfinder could conclude that Jones' actions were more than just a "frolic and detour."  As the Appellate Court concluded:

> The evidence revealed the argument began when Mauryea used the terms "blood" or "cuz," or both, in addressing Jones, and Jones took offense.  The prosecution's expert, Detective Quinn, testified: "If you are a Blood gang member and I'm a Crip gang member, and I say what's up, Cuz, and you respond, what's up, Blood, that's a pure

challenge.  I have disrespected you, in turn you disrespected me, and we will meet that with violence."  Meadors then got involved, asserting Jones was his brother and saying, "Don't talk to my motherfucking brother like that."  Quinn testified that if one gang member gets into an argument or a fight with someone, other gang members nearby are expected to jump in and lend assistance.  Otherwise, they would lose respect in the gang.

At that point, Alisha directed them to take their argument outside.  Upon stepping outside, Mauryea found the three gang members arrayed in a semi-circle in front of him and they continued to argue.  Meadors threw up gang signs to Mauryea and threatened to shoot him, while defendants postured as if they possessed guns.  Meadors said, he would "bust" Mauryea and "shoot this whole house up," all while he held his hand near his waistline.  Mauryea also heard someone say "Trigga Mob."  At some point during this posturing,  Mauryea offered to shake hands with Jones to diffuse the situation, but Jones refused to shake his hand.

Eventually, during the argument, Jones hit Mauryea in the eye with the butt of a handgun.  A struggle ensued in which Mauryea held Jones in a headlock while the other two beat Mauryea from behind.  This ended when Meadors shot Mauryea in the back of the shoulder and Mauryea released his hold on Jones and dropped to the ground.  As the three gang members walked away together, Nickerson said something to Mauryea like, "I told you."

*Jones*, 2012 WL 2826805, at *12.

Viewing this evidence in the light most favorable to the judgment, a reasonable factfinder could believe that the shooting, after Jones and other gang members were threatened, established the specific intent requisite for the gang enhancement because Jones was acting to benefit the gang by enhancing the gang's reputation for violence and retaliating to preserve the group's repuation.

Moreover, as there is no requirement that the prosecution prove intent to otherwise benefit the gang, any claim that sufficient evidence did not support the Court of Appeal's conclusion that the shooting benefitted the gang's future activities is not relevant.  When viewing the circumstantial evidence presented by the expert witness in the light most favorable to the prosecution, a jury could reasonably infer that Jones committed the charged offenses beyond a reasonable doubt "in association with" the Crips gang and that he did so "with the specific intent

to promote, further, or assist in any criminal conduct by gang members" pursuant to Penal Code

§ 186.22(b)(1).  *See also People v. Romero*, 43 Cal. Rptr. 3d 862, 865 (Cal. Ct. App. 2006)

(explaining that § 186.22 enhancement may be proven with expert testimony about criminal

street gangs).  As the appellate court reasoned:

> The shooting occurred in known gang territory and followed the victim's
> perceived disrespect of Jones and his gang.  In fact, but for the gang affiliation of
> defendants and Meadors, there would have been no perceived disrespect and no need for
> retaliation.  It is clear the three attempted to intimidate the victim into submission, but he
> refused to back down.  In effect, he forced their hand.  As Quinn testified, retaliation was
> mandatory in the face of disrespect.  The assault also served the purpose of sending a
> message of the gang's willingness to use violence.  Even if the purpose of the violence
> was not announced to bystanders, it surely was made clear to the victim and his
> companions, who might reasonably have been dissuaded from further acts of perceived
> disrespect.  Moreover, the violence may have dissuaded them from speaking with law
> enforcement about further criminal acts by the gang.  Thus, there was ample evidence the
> crime benefit[t]ed the Crips gang.

*Jones*, 2012 WL 2826805, at *13.

In sum, the Court concludes that the state court's denial of Jones' sufficiency of the

evidence claim with respect to the gang enhancement was not contrary to nor did it involve an

unreasonable application of clearly established federal law, and it did not constitute an

unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).  Accordingly, because Jones

fails to establish by clear and convincing evidence that the state court's factual findings were

erroneous and the record does not compel the conclusion that no rational trier of fact could have

found proof that the shooting was committed with the intent to benefit a street gang, Jones

cannot prevail on this legal insufficiency claim either.

B.    Instructional Error (Claim 2)

Jones next argues that the trial court erred with respect to the gun enhancement jury

instruction.  In considering this claim on direct appeal, the Court of Appeal recounted the

following facts and arguments:

> [Jones and Nickerson] contend the jury was not properly instructed on the firearm
> enhancement.  Mauryea received two primary injuries, one when he was struck in the eye
> with the butt of a gun and one when he was shot in the back.  [Jones and Nickerson]
> argue: "The evidence that [Mauryea] was pistol whipped was quite strong but the
> evidence that he was actually shot was very much in dispute."  [Jones and Nickerson]
> argue the instructions and verdict forms failed to require the jury to specify which of
> these acts caused great bodily injury.  And because the pistol whipping is only a use of
> the firearm not a discharge, it cannot support the 25–years–to–life enhancement.

> The jury was instructed pursuant to CALCRIM No. 1402 in relevant part as
> follows:

>> "If you find the defendant guilty of the crime charged in Count 1, and you
>> find that the defendant committed that crime for the benefit of, at the direction of,
>> or in association with a criminal street gang with intent to promote, further, assist
>> in any criminal conduct by gang members, you must then decide whether the
>> People have proved the additional allegation that one of the principals personally
>> used and intentionally discharged a firearm during that crime and caused great
>> bodily injury.  You must decide whether the People have proved that allegation
>> and return a separate finding for each crime.

>> "To prove this allegation, the People must prove that:

>> "*1. Someone who was a principal in the crime personally used and
>> discharged a firearm during the commission of the Attempted Murder*;

>> "2. That person intend [sic] to discharge that firearm;

>> "And

>> "3. That person's act caused great bodily injury to another person who
>> was not an accomplice to the crime.  [¶] . . . [¶]

>> "*A principal personally uses a firearm if he intentionally does any of the
>> following:*

>> "*1. Displays the firearm in a menacing manner;*

>> "*2. Hits someone with the firearm;*

>> "*Or*

>> "*3. Fires the firearm.*

>> "Great bodily injury means significant or substantial physical injury.  It is
>> an injury that is greater than minor or moderate harm.  [¶] . . . [¶]

>> "The People have the burden of proving each allegation beyond a
>> reasonable doubt.  If the People have not met this burden, you must find that the
>> allegation has not been proved."  (Italics added.)

17

In the original CALCRIM version of the instruction, the first italicized portion above reads: "[1.] Someone who was a principal in the crime personally (used/discharged) a firearm during the commission [or attempted commission] of the _____< insert appropriate crime listed in Penal Code section 12022.53(a) (./;)" (CALCRIM No. 1402.)  The Bench Notes to the instruction state: "In this instruction, the court must select the appropriate options based on whether the prosecution alleges that the principal used the firearm, intentionally discharged the firearm, and/or intentionally discharged the firearm causing great bodily injury or death."  (Bench Note to CALCRIM No. 1402, p. 1161.)

The Bench Notes also direct that the second italicized portion of the instruction given by the court, describing personal use of the firearm, should be given "only if the prosecution specifically alleges that the principal 'personally used' the firearm."  (Bench Note to CALCRIM No. 1402, p. 1161.)  However, it further instructs that the language not be included "if the prosecution alleges intentional discharge or intentional discharge causing great bodily injury or death." (*Ibid.*)

In the present matter, the prosecution charged both use and discharge of the firearm causing great bodily injury.  The verdict forms also asked the jury to determine if [Jones and Nickerson] "used and discharged" the firearm.  The Bench Notes provide no guidance as to whether the description of personal use should be included in the instruction where the prosecution alleges both use and discharge.

*Jones*, 2012 WL 2826805, at *6-8.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.*

As an initial matter, because the state appellate court found Jones's instructional error claim forfeited under California's contemporaneous objection rule, the claim is procedurally defaulted from federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment). The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial. *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). Because the state appellate court held that the claim was thereby forfeited under California's contemporaneous objection rule, Jones's jury instruction claim may be deemed procedurally defaulted.

In any event, Jones fails to demonstrate that he was denied a fair trial. In making that determination, "[t]he jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at

72.  Based on the Court's review of the instructions and the trial record as a whole, this Court

agrees with the appellate court that there is no basis to conclude that there was any defect with

the jury instruction here.  As the appellate court found, CALCRIM No. 1402 unambiguously

informed the jury that it was required to find the use and discharge of the firearm occurred

during the commission of the attempted murder, and the only act alleged during the attempted

murder was the discharge of the firearm into the victim's back.  *Jones*, 2012 WL 2826805, at *9.

There is therefore no reasonable likelihood that the instruction was applied in a way that violated

the Constitution.  *Estelle*, 502 U.S. at 72.

Moreover, given that the instruction in this case adequately informed the jury that, in

order to find the gun enhancement true, it must find an intentional use and discharge of the

firearm during the commission of the attempted murder rather than during the assault that

preceded it, the instruction was not deficient.  Jones is therefore not entitled to relief on his jury

instruction claim.

C.    Prosecutorial Misconduct (Claim 5)

Jones next argues that the prosecutor committed misconduct and that trial counsel

provided ineffective assistance by failing to object to the alleged misconduct.  The Court of

Appeal considered and rejected this claim as follows:

> Defendants contend the prosecutor committed misconduct during argument by
> misstating the law regarding the standard for finding provocation sufficient to reduce the
> crime from attempted murder to attempted voluntary manslaughter.  They cite the
> following argument:
>> "The lesser included offense essentially says, yeah, there was attempted
>> murder that took place, but there was a justification for that that the person who
>> committed that attempted murder was acting under the heat of passion.  And so
>> because of that, we're not going to call it attempted murder, we're going to call it
>> attempted voluntary manslaughter.

"However, in order for that to happen, you have to act under the direct and immediate influence of the provocation.  And it would have to be the type of provocation that would cause a reasonable person, for instance like all of you, to have attempted to kill somebody under these circumstances.

"It's not a defendant who gets to set up their own circumstances and say, well, I was provoked.  I was, you know, acting under the heat of passion because he insulted and got to do that.  No, it's a reasonable person under the same circumstances, they would have felt so compelled to attempt to kill this person because of what had taken place? And that clearly will not apply."

Defendants contend the prosecutor misstated the law in suggesting the provocation must be sufficient to have caused a reasonable person to attempt to kill. They argue that, while it is appropriate to use an objective standard, the requirement is merely that the heat of passion be sufficient to cause a reasonable person to act under the influence of that passion rather than his judgment.  The jury need not also find the provocation was such as would have caused a reasonable person to act in a specific way, i.e., to attempt to kill.

Defendants acknowledge their counsel failed to object to the prosecutor's argument.  "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal. 4th 795, 841.)  However, "[a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile.  [Citations.]  In addition, failure to request the jury be admonished does not forfeit the issue for appeal if '"an admonition would not have cured the harm caused by the misconduct."' [Citations.]"  (*People v. Hill* (1998) 17 Cal.4th 800, 820-821.)

Defendants do not contend a timely objection or request for admonition would have been futile under the circumstances presented.  Instead, they contend counsel's failure to object amounted to ineffective assistance of counsel.  They argue a recent Court of Appeal decision, *People v. Najera* (2006) 138 Cal. App. 4th 212 (Najera ), held a similar prosecution argument was improper, and their counsel should have been aware of that decision.

Under both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, a criminal defendant has a right to the assistance of counsel.  (*See Strickland v. Washington* (1984) 466 U.S. 668, 684–685 [80 L.Ed.2d 674, 691–692]; *People v. Pope* (1979) 23 Cal.3d 412, 422.)  This right "entitles the defendant not to some bare assistance but rather to effective assistance." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings."  (*People v. Lewis* (1990) 50 Cal. 3d 262, 288.)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions. [Citation.]  Were it otherwise, appellate courts would be required to engage in the '"perilous process"' of second-guessing counsel's trial strategy. [Citation.] Accordingly, a reviewing court will reverse a conviction on the ground of inadequate counsel 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citations.]"  (*People v. Frye* (1998) 18 Cal. 4th 894, 979–980, *disapproved on other grounds in People v. Doolin* (2009) 45 Cal. 4th 390, 421, fn. 22.)

"Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight."  (*People v. Kelly* (1992) 1 Cal. 4th 495, 520.)  "A reviewing court will not second-guess trial counsel's reasonable tactical decisions."  (*Ibid.*)  "[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings.  The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal."  (*People v. Frierson* (1991) 53 Cal. 3d 730, 749.)

Assuming the prosecutor misstated the applicable law and an objection and request for admonition would not have been futile, the question is whether counsel's failure to object was ineffective assistance or a matter of trial tactics.  Defendants argue "there is no tactical purpose for counsel to have failed to object to the prosecutorial misconduct."  However, beyond declaring it to be so, defendants provide no argument or citation to authority.  The argument is therefore forfeited.  (*Kim v. Sumitomo Bank* (1993) 17 Cal. App. 4th 974, 979.)

At any rate, to prevail on their ineffective assistance claim, defendants must show prejudice.  Defendants argue there was "compelling evidence" in the record that they acted "rashly after adequate provocation by [Mauryea] who called them names, challenged them to a fight and got [Jones] in a headlock."  However, the only name the victim called defendants was either "blood" or "cuz," neither of which would have provoked a reasonable person to act rashly.  In *Najera*, the court concluded the defendant was not prejudiced by the prosecutor's argument where the victim had called the defendant a "'faggot.'"  (*Najera*, *supra*, 138 Cal. App. 4th at p. 226.)  The court explained: "That taunt would not drive any ordinary person to act rashly or without due deliberation and reflection.  '"'A provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter.'"'  (*Ibid.*; *quoting from People v. Wells* (1938) 10 Cal. 2d 610, 623.)

Although there is evidence in the record that it was Mauryea who invited the others to take their argument outside, there is no evidence he challenged them to a fight. On the contrary, Mauryea tried to defuse the situation.  And while Mauryea did have Jones in a headlock, this occurred only after Jones initiated the assault by striking Mauryea in the eye with the butt of a handgun.  Furthermore, the trial court correctly instructed the jury on the applicable standard for provocation and to follow the court's

> instructions if they conflict with the attorneys' comments on the law.  We presume the jury followed that instruction.  (*People v. Boyette* (2002) 29 Cal. 4th 381, 436.)  We therefore conclude defendants failed to establish any prejudice from the prosecutor's argument.  Absent prejudice, defendants' ineffective assistance claim dissolves.

*Jones*, 2012 WL 2826805, at *15-16.

Because counsel did not object to the challenged statement at trial, the Court of Appeal found that Jones had forfeited the claim on direct appeal.  *Id.* at *15.  Because Jones argued ineffective assistance of counsel with respect to the forfeiture, however, the Court of Appeal discussed the claim nonetheless, and ultimately concluded that Jones was not prejudiced by counsel's inaction because there was inadequate evidence of provocation and in light of the instructions given to the jury.  *Id.* at *16.  That conclusion is both reasonable and supported by the record.

For the same reasons, Jones cannot show that the prosecutor's statements constituted misconduct.  To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice.  *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation).  Because Jones fails to establish prejudice, his prosecutorial misconduct claim fails.  Likewise, because Jones does not show that the prosecutor committed misconduct, he cannot show that counsel was ineffective for failing to object or that

he was prejudiced by the failure.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim).  Jones is not entitled to relief on this ground.

     D.     <u>Cumulative Error (Claim 6)</u>

Jones further claims that the cumulative effect of the above instructional errors warrants relief.  "While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."  *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302-03 (1973)).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence  in determining the jury's verdict."  *Brecht*, 507 U.S. at 623 (citation omitted).  In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process.  *See Chambers*, 401 U.S. at 294.  As discussed throughout this opinion, however, Jones does not allege any claims that amount to error, and thus he demonstrates no errors that can accumulate to a level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Accordingly, Jones is not entitled to relief on his cumulative error claim either.

     E.     <u>Ineffective Assistance of Counsel (Claim 7)</u>

Finally, Jones argues that his trial counsel was ineffective with regards to the doctors' testimonies at trial by allowing the prosecution to present hearsay testimony, failing to call the doctor who initially treated the victim, and by calling an expert who was more helpful to the prosecution than the defense.  Jones also presented these claims to the California Supreme Court

24

in a filing dated July 9, 2014, and entitled "Supplemental Brief."  At the time of the filing, Jones

had pending before the court an initial state habeas petition dated April 21, 2014.  The California

Supreme Court docketed the submissions as two separate petitions.  Although it denied the initial

petition without comment, it denied the "Supplemental Brief" with citation to *In re Robbins*, 18

Cal. 4th at 780 (959 P.2d 311 (Cal. 1998)), which indicates that it was denied for untimeliness.

Federal courts "will not review a question of federal law decided by a state court if the

decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This

Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the

petitioner failed to follow applicable state procedural rules in raising the claims."  *Sawyer v.

Whitley*, 505 U.S. 333, 338 (1992).  "The state-law claim may be a substantive rule dispositive of

the case, or a procedural barrier to adjudication of the claim on the merits."  *Walker v. Martin*,

131 S. Ct. 1120, 1127 (2011).  Procedural default does not preclude federal habeas review unless

the last state court rendering judgment in a case "clearly and expressly" states that its judgment

rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v.

Reed*, 489 U.S. 255, 262-63 (1989)).  "In order to constitute adequate and independent grounds

sufficient to support a finding of procedural default, a state rule must be clear, consistently

applied, and well established at the time of the petitioner's purported default."  *Morales v.

Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

The Ninth Circuit has held that California's "substantial delay" timeliness standard

satisfies the "independent and adequate" requirement.  *See Bennett*, 322 F.3d at 582-83; *see also*

*Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate). The Ninth

Circuit has further stated:

> If a petitioner has procedurally defaulted on a claim, a federal court may
> nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the
> claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates
> that not hearing the claim would result in a "fundamental miscarriage of justice."
> *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640; *Sawyer v. Whitley*, 505
> U.S. 333, 339-40, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992). An objective factor outside
> of a petitioner's control (*e.g.*, ineffective assistance of counsel or a basis for the claim
> that was previously unavailable) could constitute cause. *Murray v. Carrier*, 477 U.S.
> 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *McCleskey v. Zant*, 499 U.S. 467,
> 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). The petitioner can meet the prejudice
> prong if he demonstrates "that the errors . . . worked to his *actual* and substantial
> disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."
> *White v. Lewis*, 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady*, 456 U.S.
> 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). A petitioner can demonstrate a
> fundamental miscarriage of justice by "establish[ing] that under the probative evidence
> he has a colorable claim of factual innocence." *Sawyer*, 505 U.S. at 339, 112 S. Ct. 2514,
> 120 L. Ed. 2d 269 (quotation marks omitted).

*Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

In his Traverse, Jones argues that not hearing his claims would result in a fundamental

miscarriage of justice, and that he has established a gateway claim of actual innocence sufficient

to overcome the procedural bar. *See Schlup v. Delo*, 513 U.S. 298 (1995) (setting forth standard

of gateway showing of actual innocence sufficient to overcome procedural default). It is

well-settled that a federal court may consider a procedurally defaulted habeas claim if the

petitioner makes a sufficient showing of actual innocence; *i.e.*, that in light of all the evidence it

is more likely than not that no reasonable juror would have found him guilty beyond a

reasonable doubt. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013); *see also Schlup*, 513

U.S. at 329. To pass through the actual innocence/*Schlup* gateway, a petitioner must establish

his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United*

*States*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003).

"To be credible, such a claim requires petitioner to support his allegations of constitutional error

with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653

F.3d 929, 945 (9th Cir. 2011).  A petitioner "must show that it is more likely than not that no

reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 133

S.Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327).  Because of "the rarity of such evidence, in

virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway*

*v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559

(1998)).

      Jones fails to satisfy this high bar.  In his Petition, Jones argues that the evidence against

him was legally insufficient to sustain his conviction.  Even if those claims were meritorious,

and as discussed *supra* they are not, whether the facts and evidence were legally sufficient to

prove the offense fails to satisfy the requirements of the actual innocence gateway.  Moreover, as

discussed *infra* with respect to Jones' request for additional testing, Jones fails to present a

meritorious claim of newly-discovered exculpatory evidence.  In short, the Court cannot find that

the record and pleadings in this case contain "evidence of innocence so strong that [the Court]

cannot have confidence" in the outcome of the proceedings. *McQuiggin*, 133 S. Ct. at 1936

(quoting *Schlup*, 513 U.S. at 316).  Jones thus fails to overcome the procedural bar on his

ineffective assistance of counsel claim, and he is not entitled to relief.

F.     Requests for Evidentiary Hearing (Petition) and Discovery (Docket No. 37)

Jones further requests in his Petition an evidentiary hearing and moves separately at Docket No. 37 for the "production, maint[enance] and testing of newly discovered exculpatory evidence." The motion at Docket No. 37 seeks leave to conduct discovery of the victim's medical records. Both of these requests pertain to Jones' claim that there was insufficient evidence that the victim suffered a gunshot wound to his shoulder. Jones contends that the additional discovery and evidentiary hearing will allow him to show that the victim's injury to his shoulder was not caused by a gunshot.

Rule 6 of the Rules Governing Section 2254 Cases ("Rule 6") governs discovery in this matter. Rule 6 provides:

> (a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

> (b) Requesting discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

"[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)). However, courts should not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States Dist. Ct. for the N. Dist. of Cal.* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (habeas corpus is not a fishing expedition for petitioners to

"explore their case in search of its existence") (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

The good cause requirement of Rule 6 is satisfied where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09. The good cause standard set forth by Rule 6 is similar to the standard that governs whether or not a habeas petitioner is entitled to an evidentiary hearing: "in deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *See, e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (discussing evidentiary hearing standard); *see also Jones v. Wood*, 114 F.3d 1002, 1008-09 (9th Cir. 1997) (where petitioner satisfied the standard for obtaining an evidentiary hearing on certain claims, district court abused its discretion by denying discovery request pertaining to such claims). Once a petitioner has demonstrated good cause to conduct discovery, the discovery provisions contained in the Federal Rules of Civil Procedure apply. Rule 6 of the Rules Governing Section 2254 Cases; Bracy, 520 U.S. at 904.

Section 2254(e)(2) of AEDPA bars most evidentiary hearings if the applicant "failed" to develop the factual basis for the claim in state court. In this context, "failed" "connotes some omission, fault, or negligence on the part of the person who has failed to do something." *Williams*, 529 U.S. at 431-32. "Under § 2254(e)(2), a petitioner who failed to develop the facts of the claim in state court may not obtain a hearing in federal court except in limited circumstances." *See, e.g.*, *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1007 (D. Ariz. 2007). If the

court determines that the applicant failed to develop the factual basis for a claim in state court,

the district court can hold an evidentiary hearing only if the petitioner meets two demanding

requirements: (1) the allegations, if proven, would entitle the petitioner to relief; and (2) the state

court trier of fact has not reliably found the relevant facts. *Rich*, 187 F.3d at 1068.  A habeas

petitioner who has failed to develop a factual basis for his claims in state court and requests an

evidentiary hearing before a federal district court must demonstrate that "the claim relies on . . . a

factual predicate that could not have been previously discovered through the exercise of

diligence and . . . the facts underlying the claim would . . . establish by clear and convincing

evidence that but for constitutional error, no reasonable factfinder would have found the

applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).

Jones fails to demonstrate good cause here.  Although Jones maintains that he only

became aware of the exculpatory evidence after his conviction, the victim's medical records are

not newly discovered evidence.  Indeed, a letter attached to Jones' motion at Docket No. 37

indicates that his trial counsel obtained the medical records pursuant to a subpoena issued in

February 6, 2009.[4]  Although Jones claims in his reply in support of the motion that the medical

---

[4]        Jones claims that the medical records are discoverable under *Brady v. Maryland*, 373 U.S. 83 (1962).  *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching," *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed.  *Strickler*, 527 U.S. at 281.  That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).  The letter from Jones' trial counsel, attached as an exhibit to the motion at Docket No. 37, indicates that counsel received the medical records but was unable to provide it directly to Jones in its entirety because of California's strict privacy protections.  Because the material was shared with defense counsel, Jones cannot show that the prosecution wrongfully suppressed the records.

records he seeks differs from that available at trial, it appears that this argument is based on

Jones' mistaken belief that the doctors who testified at trial were not the victim's treating

physicians.  The record indicates otherwise, and it therefore appears that the records Jones now

seeks do not differ from the evidence available to him in state court.

Moreover, as previously discussed, the Court determines that the state court's

adjudication of Jones' claim that there was insufficient evidence the victim was shot was not

contrary to or an unreasonable application of clearly established federal law.  Jones makes no

showing that additional testimony on this point would produce anything more than what is

already in the record.  *See Griffin v. Johnson*, 350 F.3d 956, 966 (9th Cir. 2003) (denying

evidentiary hearing because it would not produce evidence more reliable or more probative than

the testimony and affidavits already presented).  As previously discussed, it does not appear that

Jones seeks anything other than what the medical experts in this case already relied upon.  His

claim that further testing of that evidence would lead to a favorable result is purely speculative.

For the foregoing reasons, the Court denies Jones' requests for discovery and an evidentiary

hearing.

## V. CONCLUSION AND ORDER

Jones is entitled to relief on any ground raised in his Petition and is not entitled to further discovery or an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing and the motion for evidence testing at Docket No. 37 are **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 1, 2016.

    /s/James K. Singleton, Jr.
     JAMES K. SINGLETON, JR.
Senior United States District Judge
